UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DOMENICK BONANNO,

                    Plaintiff,

            - against -

SECURITY ATLANTIC MORTGAGE CO., INC.,
SECURITY AMERICAN MORTGAGE
COMPANY, and BANK OF NEW YORK as
Trustee for Certificateholders CWABS, Inc.,
Asset-Backed Certificates, Series
2006-IMI, and JOHN DOES 1-10,

                    Defendants.
-------------------------------------------------------------X

ONLINE PUBLICATION ONLY

MEMORANDUM
AND ORDER

07-CV-4071 (JG) (WDW)

A P P E A R A N C E S:

    KENNETH S. PELSINGER, P.C.
        1900 Hempstead Turnpike, Suite 304
        East Meadow, New York
    By:    Kenneth S. Pelsinger
        Attorneys for the Plaintiff

    BILLEK AND YESALONIS, P.C.
        10 Parsonage Road, Suite 306
        Edison, New Jersey
    By:    Brian E. Yesalonis
        Attorneys for Defendants Security Atlantic Mortgage Company, Inc. and Security
            American Mortgage Company, Inc.

JOHN GLEESON, United States District Judge:

        In 2005, Domenick Bonnano borrowed $625,000 from defendants Security American Mortgage Company, Inc. ("Security American") and Security Atlantic Mortgage Company, Inc. ("Security Atlantic"), and granted them a security interest in his home. Bonnano later brought this action alleging that, in the course of the mortgage transaction, the defendants violated the Real Estate Settlement Procedures Act of 1974 ("RESPA") and the Truth in Lending

Act of 1968 ("TILA"). The defendants contend that they complied with their statutory obligations and move for summary judgment. For the reasons set forth below, the motion for summary judgment is granted.

BACKGROUND

A. *The Mortgage Transactions*

This case arises out of Bonnano's desire to refinance the mortgage on his home in Freeport, New York in 2005. On August 30 of that year, he entered into two simultaneous mortgage transactions with the defendants, one for $500,000, and another for $125,000. The broker for the transactions was Mortgage Zone, and the settlement agent was Anthony Mangiaracina. Bonnano was not represented by counsel at the closing.

In support of their motion for summary judgment, the defendants have submitted the following documents, each of which bears Bonnano's signature:[1]

- The mortgage documents and promissory notes, all signed by Bonnano on August 30, 2005;

- HUD-1 Settlement Statements,[2] purporting to explain the transaction fees, signed by Bonnano and Mangiaracina on August 30, 2005;

- Notices of Bonnano's right to cancel the transaction. Bonnano's signature appears twice on the document: (i) once to say that he received notice of the right to cancel on August 30, 2005; (ii) again to say that, on August 30, 2005, three days had elapsed since he received notice of right to cancel;

- "Good Faith Estimates" of the charges at settlement, provided by Mortgage Zone, and signed by Bonnano on August 30, 2005;

---

[1] In addition, the defendants have submitted an appraisal for Bonnano's home dated July 21, 2005, valuing the home at $825,000. The defendants claim that Bonnano received a copy of the appraisal, but the appraisal is not signed by him.

[2] As further discussed below, RESPA requires settlement agents to use HUD-1 forms to itemize charges for federally-related mortgage transactions. *See* 12 U.S.C. § 2603.

- TILA Disclosure Statements, itemizing among other things the annual percentage rates of the interest on the loans, the monthly payments, and the total payments Bonnano would have to make, signed by Bonnano on August 30, 2005.

Though he does not dispute that he signed all these documents at the closing, Bonnano swears that he never received "a complete and executed set of the pertinent loan documents." Bonnano Aff. ¶ 8. He says he was not provided with "signed and dated Notices of Right to Cancel," and that he was not advised of his right to cancel "in any of the documents provided to me or by any of the parties present at the closing." *Id.* Bonnano also states that he "did not receive complete and executed HUD-1 Settlement Statements at the closing and moreover, was not provided with any opportunity to inspect said Settlement Statements prior to or at the closing despite my request made to Defendant's agent, the mortgage broker for the transactions, Mortgage Zone." *Id.* ¶ 9. Moreover, Bonnano denies ever receiving "complete and executed copies of Good Faith Estimates for the subject mortgage loan transactions or the required HUD Special Information Booklets prior to or at the subject closing," or "fully completed and executed TILA Disclosures for both mortgage transactions." *Id.* ¶ 10.

B.   *The Procedural History*

Bonnano, acting *pro se*, filed this action on January 9, 2007. In addition to Security American and Security Atlantic, the complaint also names as a defendant the Bank of New York, trustee for the alleged assignees of the mortgages, which was prosecuting a foreclosure action against Bonnano in state court. The Bank of New York has not appeared in this action.[3] The complaint seeks rescission of the mortgages, an injunction against foreclosure proceedings, and damages pursuant to TILA and RESPA.

---

[3] In this memorandum and order, the term "defendants" refers to the moving defendants, Security American and Security Atlantic.

Bonnano is now represented by counsel. On April 7, 2010, the defendants made this motion for summary judgment.

DISCUSSION

A. *Standards on a Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also, e.g., Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). A fact is "material" under Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). However, the party opposing summary judgment "may not rely merely on the allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

Once the moving party has met its burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Id.* at 586. Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24.

B.     *The RESPA Claims*

In the course of enacting RESPA in 1974, Congress found that "significant reforms in the real estate settlement process" were needed in order to give consumers "greater and more timely information on the nature and costs" of the process, and to protect consumer from "unnecessarily high settlement charges caused by certain abusive practices that ha[d] developed in some areas of the country." 12 U.S.C. § 2601(a); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 122 (2d Cir. 2007). To address these concerns, Congress sought to bring about four kinds of changes in the settlement process: (1) "more effective advance disclosure to home buyers and sellers of settlement costs," (2) "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services," (3) "a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance," and (4) "reform and modernization of local recordkeeping of land title information." 12 U.S.C. § 2601(b). Bonnano relies mainly on the first aim, contending that the defendants violated their obligations to disclose the costs of the mortgage transactions.

RESPA assigns to the Secretary of Housing and Urban Development ("HUD") the authority to prescribe rules, regulations, and exemptions, *see* 12 U.S.C. §§ 2602(1)(B)(6), 2617, and many of RESPA's specific requirements are set forth in rules made by the HUD Secretary, rather than in the statute itself. Bonnano asserts a cavalcade of RESPA violations by the defendants; I take each allegation in turn.

1. *The Defendants' Alleged Failure to Afford Bonnano the Right to Inspect HUD-1 Settlement Statements Prior to Closing*

In his opposition to the motion for summary judgment, Bonnano first asserts that the defendants violated RESPA because they did not afford him the right to inspect the HUD-1 Settlement Statements one day prior to the settlement. The RESPA statute requires that the HUD-1 Settlement Statement "shall be completed and made available for inspection by the borrower at or before settlement by *the person conducting the settlement*." 12 U.S.C. § 2603(b) (emphasis added). "[T]he person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day." *Id.* Similarly, the relevant regulation provides as follows:

> The *settlement agent* shall permit the borrower to inspect the HUD-1 or HUD-1A settlement statement, completed to set forth those items that are *known to the settlement agent* at the time of inspection, during the business day immediately preceding settlement.

24 C.F.R. § 3500.10(a) (emphasis added). The defendants respond that Mangiaracina was the settlement agent, and that, as lenders, the defendants are not liable for any omission on his part to comply with this aspect of RESPA's requirements. There is, defendants say, no authority for holding the lender liable for a settlement agent's failure to permit the borrower to inspect the HUD-1 Settlement Statements.

6

I agree with the defendants that, with certain exceptions not applicable here, the obligation to permit the borrower to view the HUD-1 Settlement Statements on the business day prior to closing applies only to the settlement agent. *See* Paul Barron, Michael A. Berenson, and Dan Rosin, Federal Regulation of Real Estate and Mortgage Lending § 2.41 (4th ed. 2009) ("It is the settlement agent who has the responsibility for making the HUD-1 or HUD-1A Settlement Statement available one day in advance."). The plain text both of the statute and of the regulation limits any duty to allow pre-closing inspection by the borrower to the settlement agent. In addition, it would make little sense to impose on the lender an obligation to tell the borrower what the settlement agent knows about the transaction costs. Furthermore, under 24 C.F.R. § 3500.10(b), the settlement agent is not even required to provide the Settlement Statements to the lender until the settlement. In the absence of any authority for this asserted RESPA violation, I find that the defendants are entitled to summary judgment on the claim.[4]

2. *The Defendants' Alleged Failure to Advise Bonnano of the Right to Inspect the HUD-1 Settlement Statements*

Bonnano's next contention is that the defendants did not advise him that he had a right under RESPA to inspect the HUD-1 Settlement Statements during the business day prior to closing. Plaintiff, however, cites no statutory basis in RESPA or anywhere else for an obligation on the lender's part to inform the borrower of the right to ask the settlement agent to allow the borrower to inspect the Settlement Statements. As noted above, the burden of permitting the borrower to inspect the Settlement Statements on the business day prior to closing is placed on the settlement agent by the statute and the regulations, and plaintiff has identified no authority

---

[4] In any event, it appears that a violation of § 2603 would not give rise to a private right of action. *See, e.g., Bloom v. Martin*, 865 F. Supp. 1377, 1384 (N.D. Cal. 1994) ("The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603.").

7

that requires the lender to advise the borrower of the right to inspect. Accordingly, there is no legal basis for this claim, and the defendants are entitled to summary judgment on it.

    3.     *The Defendants' Alleged Failure to Provide Bonnano with the HUD Special Information Booklet and Good Faith Estimates Prior to Closing*

Bonnano also contends that the defendants violated RESPA by failing to provide him with a copy of the HUD Special Information Booklet and accompanying good faith estimates when he applied for a loan. *See* 12 U.S.C. § 2604; 24 C.F.R. § 3500.6. But a lender is exempted from the obligation to furnish a borrower with a copy of the Booklet and good faith estimates where, as in this case, the transaction is a refinancing transaction. 24 C.F.R. § 3500.6(a)(3)(i). This claim, therefore, must also be dismissed.

    4.     *The Defendants' Alleged Failure to Provide Bonnano with the Executed HUD-1 Settlement Statements At the Closing*

Bonnano maintains next that the defendants violated their obligation as lender to provide him with completed and executed copies of the HUD-1 Settlement Statements at the closing. Bonnano, however, signed his name to the following statement at the bottom of the completed HUD-1 Statements:

> CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and reimbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Bonnano does not contend that his signatures to these certifications were procured by duress or by misrepresentation. Rather, he simply denies that he ever received the statements, contradicting the statement to which he signed his name. Without more, that denial is insufficient to create a genuine issue of fact as to whether Bonnano actually received the HUD-1 Settlement Statements, and I therefore grant summary judgment to the defendants on this claim.

5. *The Defendants' Alleged Failure to Disclose the Yield Spread Premium Paid to Mortgage Zone*

Bonnano insists that the defendants failed properly to disclose the "yield spread premium" paid to the Mortgage Zone. A "yield spread premium" is a bonus paid to a broker when the broker originates a loan at an interest rate higher than the minimum rate approved by the lender for a particular loan. The broker is rewarded with a percentage of the "yield spread" – the difference between the minimum rate and the actual rate – multiplied by the amount of the loan. *See Parker v. Long Beach Mortgage Co.*, 534 F. Supp. 2d 528, 533 (E.D. Pa. 2008). Here, the yield spread premium was disclosed to Bonnano in the HUD-1 Settlement Statement for the $500,000 mortgage.[5] Line 811 of that document states: "YIELD SPREAD PREMIUM PD LENDER TO MTG ZONE (POC $5,000)." Bonnano raises two objections to the way the yield spread premium was disclosed to him.

First, Bonnano states that the yield spread premium was misrepresented as a "fee outside closing." In this respect, Bonnano appears to be invoking RESPA's requirement that the Settlement Statement "shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." 12 U.S.C. § 2603. However, the Statement makes clear that the broker is receiving a payment from the lender for its role in the transaction, and I see nothing inaccurate or misleading about the way the HUD-1 Settlement Statement explains the yield spread premium.

Second, Bonnano complains that the description of the yield spread premium is misleading because it stated "MTG ZONE" rather than "Mortgage Zone." In the circumstances, however, there was plainly nothing misleading about using "MTG" rather than the word

---

[5] As noted above, Bonnano signed his name to certifications that he had "carefully reviewed" the Settlement Statements.

9

"Mortgage." Just three lines above, the Settlement Statement enumerates a $2,625.00 fee – to be paid, unlike the yield spread premium, from the borrower's funds at settlement – under the name "MORTGAGE BROKER FEE TO MTG ZONE." In using an accessible abbreviation for an entity that is obviously the mortgage broker, the defendants did not violate their obligation to disclose the fee paid by the lender to the broker.

For these reasons, Bonnano's RESPA claims relating to the yield spread premium, like his other RESPA claims, fail as a matter of law and the defendants are entitled to summary judgment dismissing the claims from the case.

C. *The TILA Claims*

The main purpose of TILA is to inform consumers of the true cost of credit. 15 U.S.C. § 1601 *et seq.* The statute also grants certain consumer borrowers the right to rescind within three days of the transaction, and requires lenders to inform borrowers of the right to rescind. As is the case with RESPA, most of TILA's specific requirements are found in the regulations implementing the statute, known as "Regulation Z." *See* 12 C.F.R. Part 226.

1. *The Defendants' Alleged Failure to Provide Bonnano With Notice of Right to Cancel*

The first TILA claim pressed by Bonnano in his opposition to the motion for summary judgment is an alleged violation of the defendants' obligations to provide notice of his right to cancel the mortgage transactions. In support of their motion for summary judgment, however, the defendants have submitted copies of documents entitled "Notice of Right to Cancel." These documents explained to Bonnano that "[y]ou have a legal right under federal law to cancel this transaction, without costs," within three business days of the last of three events – (1) the date of the transaction, August 30, 2005; (2) the date Bonnano received the Truth-in-

10

Lending disclosures; or (3) the date Bonnano received the notice itself. The notices explained clearly how to exercise the right to cancel the transactions.

On each of the two notices – one for each mortgage – Bonnano signed his name twice. The first signature attested that Bonnano had received the Notice of Right to Cancel forms. The second, under the heading "Certificate of Confirmation," manifested Bonnano's understanding that more than three business days had elapsed since he received copies of the Notices of Right to Cancel form and other Truth-in-Lending Act Disclosures.

Again, Bonnano does not contend that his signature to these statements was procured by coercion, fraud, or by any other form of misrepresentations. TILA recognizes that a presumption of delivery of required disclosures arises from a written acknowledgement of receipt by the recipient. 15 U.S.C. § 1635(c). Without more, Bonnano's bald denials of the statements he earlier adopted by signing his name do not create any issue for a fact-finder to resolve, and summary judgment for defendants is proper on this claim.

2. *The Defendants' Alleged Failure to Refer Bonnano to the Relevant Contract Documents*

In the alternative, Bonnano contends that the TILA Disclosure Statements with which he was provided violate the statute and the regulations on the ground that the statements failed to meet the obligation to refer the borrower to "the appropriate contract document" for further applicable terms. The statute requires a creditor in the defendants' position to disclose to the borrower "[a] statement that the consumer should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties." 15 U.S.C. § 1638(a)(12). Regulation Z similarly requires the creditor to disclose "[a] statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right

11

to accelerate the maturity of the obligation, and prepayment rebates and penalties." 12 C.F.R. § 226.18(p).

Here, it is clear from the documents Bonnano received that the defendants met their obligation to tell him that he should refer to the appropriate contract documents for further relevant terms. Bonnano signed his name acknowledging receipt of completed copies of the TILA Disclosure Forms. Each of these forms told him: "See your loan documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties."

Bonnano's objection to this language rests on the fact that, in the case of each mortgage, there were two different contract documents – a mortgage document and a note. The TILA Disclosure Forms referred Bonnano generically to these documents rather than to the particular document where a specific term could be found. Nothing in TILA, however, requires that level of specificity, as is illustrated by the model disclosure form, which invites borrowers to use the following form of words: "See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties." 12 C.F.R. Pt. 226, App. H.

Accordingly, like the RESPA claims, all of Bonnano's TILA claims fail as a matter of law, and the defendants' motion for summary judgment dismissing them from the case is granted.

D. *The Remaining Claims*

The complaint also purports to allege a claim relating to the appraisal of Bonnano's home, a claim under Article 9 of the Uniform Commercial Code, and a claim under the Equal Credit Opportunity Act. Compl. 7, 10, 11-12. Plaintiff's opposition to summary

judgment, however, makes no attempt to support these claims with any evidence or legal argument. Plaintiff has abandoned these claims, and on that basis I grant summary judgment to the defendants.[6]

E.  *Further Discovery*

Bonnano's final argument is that further discovery is necessary before I grant summary judgment to the defendants. Under Federal Rule of Civil Procedure 56(f), if a party opposing a summary judgment motion "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the court may "deny the motion [or] order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Bonnano, however, does not identify any way in which further discovery would assist him. In any event, the discovery period for this case is complete, and Bonnano has provided no "specified reason[]" why discovery should be reopened, and I decline to exercise my discretion to do so.

---

[6] The parties to the case do not appear to be completely diverse (both Bonnano and the Bank of New York were New York citizens when the complaint was filed), so it seems that this Court has only supplemental jurisdiction over the state-law Article 9 claim. *See* 28 U.S.C. § 1367(a). In light of my decision to dismiss all of plaintiff's federal claims, I could decline to exercise supplemental jurisdiction over the Article 9 claim and dismiss it without prejudice. *See id.* § 1367(c)(3). But plaintiff has abandoned the claim, and in the interests of providing a final resolution of the parties' dispute, I choose to exercise jurisdiction over the Article 9 claim for the purpose of dismissing it with prejudice.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted in its entirety.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 26, 2010
Brooklyn, New York